**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Financial Recovery Services, Inc., | |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| John Doe, Doe Corporation, and DOES 1 through 10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Financial Recovery Services, Inc. ("FRS") states and alleges as follows for its Complaint against Defendants:

## <u>Introduction</u>

1.　Plaintiff Financial Recovery Services, Inc, ("FRS") was founded in Minnesota in 1996 with just two employees and today has hundreds of employees and provides collection and receivable management services to leading organizations in the financial services, retail, telecommunications, and utilities industries nationwide.

1

2.      For nearly three decades, FRS has built a reputation for treating its clients and consumers with fairness, honesty, consistency, and respect, and takes pride in its collaborative team of highly trained, professional employees.

3.      Defendants—whose identities are currently unknown to FRS but will be revealed through discovery—have and continue to hold themselves out as FRS and use FRS's registered trademark in widespread communications with consumers.

4.      Specifically, Defendants operated a website featuring FRS's registered trademark and frequently contact consumers by phone and hold themselves out as FRS.

5.      In their communications with consumers, Defendants have reportedly attempted to collect non-existent debts and engaged in harassing and abusive behavior.

6.      It is unclear whether Defendants' infringement of FRS's name and mark is part of a wholly illegitimate scam or part of an otherwise real, albeit critically flawed, business. In either case, the ongoing damage to FRS is severe.

7.      Defendants' unauthorized use of  FRS's name, under which FRS is licensed to conduct business in numerous jurisdictions, and Defendant's unauthorized use of FRS's trademark has caused and continues to cause irreparable

harm to FRS and also harms consumers, who have been led to believe that services purportedly offered by Defendants originate from or are in some way authorized or sponsored by FRS, when they are not.

8.      This is an action for trademark infringement, unfair competition, and deceptive trade practices. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*., Minnesota statutes, and common law.

9.      FRS seeks injunctive relief and damages arising from Defendants' willful infringement of the FRS mark in the United States, including the State of Minnesota and this District.

## The Parties

10.     Plaintiff FRS is a corporation organized under the laws of the State of Minnesota with its principal place of business located at 1345 Mendota Heights Road, Suite 100, Mendota Heights, Minnesota.

11.     Upon information and belief, Defendants John Doe, Doe Corporation, and Does 1 through 10, (collectively, and pending further identification, "Defendants") are individuals and/or entities of unknown identity responsible for impersonating FRS, through actions including but not limited to, registering the domain name finrecservices.com and operating the website accessible at that domain

(the "Infringing Website"), and by holding themselves out as FRS in phone calls made to consumers.

12.    FRS does not now know the true name or identity of Defendants, despite reasonable efforts to discover the same, and therefore sues these parties under the fictitious designations "John Doe," "Doe Corporation," and "Does 1 through 10." FRS will amend this Complaint to substitute the real party or parties in interest when identified.

### Jurisdiction and Venue

13.    This Court has jurisdiction over FRS's claims for federal trademark infringement and unfair competition under 15 U.S.C. § 1121 and 28 U.S.C. § 1331, 1338, and supplemental jurisdiction over FRS's state and common law claims for trademark infringement, and deceptive trade practices under 28 U.S.C. § 1367.

14.    Personal jurisdiction over Defendants is proper in the District of Minnesota pursuant to Minn. Stat. § 543.19 and Fed. R. Civ. P. 4(k)(1)(A), because Defendants have conducted and continue to conduct business in Minnesota, including through the operation of the Infringing Website. Additionally, Defendants

have purposefully directed their actions toward FRS, and Defendants' conduct has caused, and will continue to cause, injury to FRS in Minnesota and elsewhere.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim are believed to have occurred in this District.

## Facts

### FRS's Name, Registered Mark, and Reputation

16.     FRS's business involves the collection of consumer debt. Accordingly, it thoroughly trains its employees, has developed policies and procedures, and fosters a corporate culture of compliance with the Fair Debt Collection Practices Act ("FDCPA") and state and local laws, regulations, and licensing requirements.

17.     FRS maintains licensure or registration to collect consumer debt in numerous states and jurisdictions.


[remainder of page intentionally left blank]

18.    FRS's trademark "FRS FINANCIAL RECOVERY SERVICES" (the "FRS Mark") is currently, and has been since 2005, registered with the United States Patent and Trademark Office ("USPTO"). The FRS Mark is specifically registered for use in connection with FRS's services as a collection agency. A true and correct copy of the certificate of registration of the FRS Mark, serial number 78-475,528 and registration number 3,005,950, is excerpted below and attached hereto as **Exhibit 1**.

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,005,950
Registered Oct. 11, 2005

**SERVICE MARK**
**PRINCIPAL REGISTER**



FINANCIAL RECOVERY SERVICES, INC. (MIN-
NESOTA CORPORATION)
4640 WEST 77TH STREET SUITE #300
EDINA, MN 55435

FOR: COLLECTION AGENCY SERVICES, IN
CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 3-2-1998; IN COMMERCE 3-2-1998.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE FINANCIAL RECOVERY SERVI-
CES, APART FROM THE MARK AS SHOWN.

SER. NO. 78-475,528, FILED 8-30-2004.

NICHOLAS ALTREE, EXAMINING ATTORNEY

19.    Registration of the FRS Mark is valid, subsisting, and in full force and effect, is registered on the Principal Register of the USPTO, is incontestable pursuant

to Section 15 of the Trademark Act, 15 U.S.C. § 1065, and constitutes prima facie evidence of its validity, FRS's ownership, and FRS's exclusive right to use the FRS Mark. A copy of the USPTO's Official Notice of Acceptance and Acknowledgment under Sections 8 and 15 of the Trademark Act is attached hereto as **Exhibit 2**.

20.    Registration of the FRS Mark was most recently renewed on February 11, 2025. A copy of the USPTO's Official Notice of Acceptance is attached hereto as **Exhibit 3**.

21.    The FRS Mark prominently features the letters "FRS," and "FRS" as well as "FINANCIAL RECOVERY SERVICES" are prominently featured in FRS's public-facing marketing and publicity materials, state regulatory registrations and licenses, and its interactions with consumers and clients.

22.    Since registering the FRS Mark in 2005, and since the date of first use in commerce in 1998, FRS has continuously and extensively used the name and mark in various combinations in association with its collection agency services throughout the many jurisdictions in which it is licensed by state regulators and in which it communicates with consumers and clients.

23.    Since 1997, FRS has maintained a website located at the domain https://fin-rec.com/ (the "FRS Website"). The FRS Website is an interactive website

7

that allows consumers to make payments, provides a consumer hotline by which consumers can easily connect with FRS, and contains a portal through which clients can securely submit documents and access FRS's services.

24.    The FRS Website appears first in the list of results when searching common internet search engines such as Google for "financial recovery services" or "FRS collection agency."

25.    The FRS Website features the following primary branding:



26.    As reflected in the motto displayed on the FRS Website, FRS has developed a reputation for trust, integrity, and honor.

27.    FRS is accredited by the Better Business Bureau ("BBB") and enjoyed a BBB rating of "A" before consumer complaints to the BBB regarding Defendant's conduct lowered the BBB rating of FRS.

28.    FRS has expended significant amounts of time, effort, and money to ensure that the public (including consumers, clients, and state regulators) associate the FRS name and the FRS Mark with FRS.

29.    In the highly regulated industry of consumer debt collection, FRS's reputation with clients, consumers, and regulators as a reputable and compliant company is crucial to its continued success.

## Defendants' Infringement

30.    In or around November 2024, FRS began receiving consumer complaints arising from Defendants' actions.

31.    Since January 1, 2025, FRS has received, directly or indirectly, more than 200 complaints from consumers arising from Defendants' actions.

32.    FRS received complaints directly from affected consumers and also became aware of consumer complaints being made on the internet, including those posted to FRS's BBB profile, and complaints made to the Consumer Financial

Protection Bureau and various state regulators. FRS has also been forced to respond to lawsuits and threatened lawsuits from consumers alleging violations of the FDCPA arising from Defendants' conduct.

33.     Consumers reported that Defendants have variously identified themselves as "Financial Recovery Services," "Financial Recovery Service," and "FR Services." In many cases, consumers reported that, after receiving a phone call or voicemail from Defendants, the consumer searched for "Financial Recovery Services" or "FR Services" using Google and found FRS.

34.     One consumer stated that "all google searches for FR services lead to your agency so it appears as though it's the same business."

35.     According to another complaint, a Defendant directly told a consumer that "he could Google FRS" if the consumer did not believe Defendant. The consumer did so and located the FRS Website and lodged a complaint with FRS.

36.     Numerous consumers reported that Defendants were calling them multiple times per day

37.     One individual reported that Defendants were placing multiple calls per day to the emergency line of the individual's medical practice. Despite being assured

by FRS that the calls were not coming from FRS, this individual stated that he would report FRS to the FBI.

38.    Numerous consumers stated their intention to file reports against FRS with State Attorneys General.

39.    Other consumers stated their intention retain counsel and/or potentially initiate legal action against FRS.

40.    Many consumers reported that Defendants were "rude," "threatening," "angry," "deceptive," and "harassing."

41.    Confused consumers reported being contacted by phone by persons claiming to be working for "Financial Recovery Services" who attempted to collect debts from them, including payday loans and medical loans, as well as debts that simply never existed. Consumers reported being called daily, being called outside of the hours permitted by the FDCPA, that the callers refused to provide validation information required by the FDCPA, and that the callers were rude and discourteous, and gave evasive responses beyond claiming that they were working for "Financial Recovery Services."

42.    Examples of such complaints posted to FRS's BBB profile by consumers on January 21, 2025 and March 3, 2025 are included below:

👤 **Initial Complaint**                    **Type:** ✖ Service or Repair Issues
**Date:** 01/21/2025                        **Status:** ✔ Resolved

These people are criminals, they will not stop calling my phone. repeatedly before 8 am all hours of the day. I do not owe a debt to these people, and they will NOT LEAVE ME ALONE. The last conversation got so bad that they started blocking, me, now they are just calling me, and blocking me to make sure I don't call, there is no reason for that. STOP CALLING ME

👤 **Initial Complaint**                    **Type:** $ Billing Issues
**Date:** 03/03/2025                        **Status:** 💬 Answered

FR Services continues to call me even after I asked them not to and continue to say they are going to seek legal action. They have not validated any debt that I supposedly owe and I blocked their calls but for some reason they are able to leave a voicemail message. I do not know who they are nor do they identify themselves or what the call is about. It appears that they are not adhering to the Fair Credit Reporting Act and I am tired of telling them to stop calling me. I do not wish to change my cell phone number but if this continues, I will.

43.    Over 20 such complaints have been posted on the FRS BBB profile since January 1, 2025.

44.    FRS investigated these complaints and determined that FRS had never contacted the complaining consumer and did not have any account corresponding to the complaint.

45.    FRS's investigation of consumer complaints revealed that when Defendants contacted consumers by phone, they frequently provided a "Call Back Number" for consumers to use to reach Defendants. FRS has analyzed 17 phone numbers that were provided by Defendants to consumers. FRS's investigation

12

indicates that the following 17 Call Back Numbers, are all operated by the service provider Telnyx LLC.

| Date of Call | Call Back Number | Provider |
|---|---|---|
| 1/3/2025 | 580-589-1242 | Telnyx LLC |
| 1/14/2025 | 205-839-0243 | Telnyx LLC |
| 1/14/2025 | 585-432-8739 | Telnyx LLC |
| 1/15/2025 | 507-888-8031 | Telnyx LLC |
| 1/15/2025 | 708-746-8271 | Telnyx LLC |
| 1/15/2025 | 848-757-1598 | Telnyx LLC |
| 1/15/2025 | 580-782-4220 | Telnyx LLC |
| 1/22/2025 | 580-634-4131 | Telnyx LLC |
| 2/7/2025 | 580-396-2370 | Telnyx LLC |
| 2/7/2025 | 580-203-9882 | Telnyx LLC |
| 2/26/2025 | 580-860-0938 | Telnyx LLC |
| 3/12/2025 | 580-403-1425 | Telnyx LLC |
| 3/13/2025 | 580-358-4455 | Telnyx LLC |
| 3/20/2025 | 771-213-4299 | Telnyx LLC |
| 3/20/2025 | 580-668-9039 | Telnyx LLC |
| 3/26/2025 | 580-358-4160 | Telnyx LLC |
| 3/27/2025 | 580-732-8357 | Telnyx LLC |

46.    The Call Back Numbers appear to be Voice over Internet Protocol ("VoIP") numbers. Upon information and belief, the VoIP numbers used by Defendants are primarily registered through the carrier Telnyx LLC.

47.    Upon information and belief, the Telnyx LLC will have information that will identify Defendants as the owners of the Call Back Numbers.

48.    In February 2025, FRS employees called numbers provided by Defendants in the Voicemail Recordings and spoke to various, as-yet-unidentified, Defendants who stated that Defendants were located in, and conducting business out of, Tampa, Florida.

49.    In multiple phone calls between FRS employees and Defendants, the unidentified Defendant on the line identified him or herself as "Financial Recovery Services."

50.    In at least one call by an FRS employee to Defendants in February 2025, the unidentified Defendant who answered the phone stated that Defendants' website was "finrecservices.com" (the "Infringing Website").

51.    FRS does not operate, and has not authorized any third party to operate, the Infringing Website.

52.    A copy of the Infringing Website, as it existed on May 6, 2025, is attached hereto as **Exhibit 4**. An archived copy of the Infringing Website, as it existed on May 6, 2025 is also accessible at https://archive.ph/FwXC3.

53.     Through the Infringing Website, Defendants held and continue to hold themselves out as FRS, claiming to provide services similar to those offered by FRS, using identical and confusingly similar trade names, marks, and descriptions.

54.     The Infringing Website's domain name is registered with registrar GoDaddy.com, LLC, through a proxy registration service provided by Domains By Proxy, LLC (a GoDaddy.com, LLC subsidiary), which masks the registrant's identity.

55.     Upon information and belief, the site's domain registrar, GoDaddy.com, LLC and/or GoDaddy.com, LLC's subsidiary Domains By Proxy, LLC, will have information identifying Defendants as the registrants and operators of the website located at the "finrecservices.com" domain.

56.     Defendants are using the Infringing Website in a commercial capacity, intentionally leveraging FRS's name and goodwill to solicit business, deceive consumers, and/or divert revenue from FRS to an unauthorized, unlicensed imposter operation.

57.     From at least February 2025 until mid-May 2025, numerous elements of the Infringing Website were directly copied from the FRS website with minor (if any) changes. For example:

| FRS Website | Infringing Website |
|---|---|
| **Who We Are**<br><br>Financial Recovery Services was formed in March of 1996 by two collection industry veterans, Brian Bowers and Wade Davis. The company started with only two employees and a dream and today has hundreds of employees in four call centers and two training facilities located in Minnesota, Wisconsin, and Jamaica. This growth has been all organic | Our Experience<br><br>Financial Recovery Services was formed in March of 1993 by two collection industry veterans, Peter Bradford and Matthew Gibson. The company started with only two employees and a dream and today has hundreds of employees in four call centers and two training facilities. |
| Our organization provides comprehensive custom collection and receivables management solutions to mid-large sized organizations that already possess some type of collection or receivables management platform. Our services are meant to compliment and add value to their existing processes. By utilizing our services, organizations are able to focus on their core business segments and leverage their efforts resulting in greater efficiencies. Our ability to deliver | Our organization provides comprehensive custom collection and receivables management solutions to mid-large sized organizations. Our services are meant to compliment and add value to their existing processes. By utilizing our services, organizations are able to focus on their core business segments and leverage their efforts resulting in greater efficiencies. |

16

| FRS Website | Infringing Website |
| --- | --- |
| efforts resulting in greater efficiencies. Our ability to deliver cost effective services by leveraging our state-of-the-art infrastructure and our highly trained workforce has helped us to become a leader in the industry. Our comprehensive collection and receivables management solutions are provided to leading organizations in the financial services, retail, telecommunications, utility, and related markets. | Our ability to deliver cost effective services by leveraging our state-of-the-art infrastructure and our highly trained workforce has helped us to become a leader in the industry. Our comprehensive collection and receivables management solutions are provided to leading organizations in the financial services, retail, telecommunications, utility, and related markets. |

58.    Until mid-May 2025, the Infringing Website prominently featured logos and designs that infringe on FRS's registered trademark:

**FRS's Registered Mark:**          **Infringing Website:**

          

59.    Individuals identified on the Infringing Website as Defendants' founders do not appear to be licensed debt collectors and FRS was unable to locate any real persons matching the descriptions of purported founders "Peter Bradford" and "Matthew Gibson" provided on the Infringing Website.

17

60.    FRS has been, and continues to be, damaged by Defendants' impersonation of FRS and infringement of its name, image, and mark.

61.    Between January and April 2025, dozens of consumers have posted negative reviews and complaints to FRS's Better Business Bureau profile after receiving communications from Defendants.

62.    Consumer complaints posted to the Better Business Bureau website arising from Defendants' actions include common themes, including that Defendants: operate out of Florida, use phone numbers with the area code 580, attempt to collect non-existent debts, fail to provide required information to consumers.

63.    Consumer complaints about Defendants' purported collection activities frequently reference the fact that Defendants attempt to collect payday loans and debts from medical laboratory testing. FRS does not collect on medical debt or payday loans.

64.    FRS has incurred reputational damage as a result of Defendants' actions. For example, between January and April 2025, FRS's rating with the BBB has decreased from "A" to "B+" because of dozens of consumer complaints arising from Defendants' actions.

65.    In addition to reputational damage, FRS has incurred monetary damages, as it has been required to respond to hundreds of consumer complaints directed at Defendants, respond to lawsuits and threatened litigation, investigate Defendants' infringement, and retain legal counsel to attempt to mitigate the damages being caused by Defendants.

66.    In May 2025, FRS was served with a lawsuit arising from Defendants' actions, wherein the plaintiff alleged that she had been contacted by debt collector purporting to be FRS and attempting to collect on a payday loan.

67.    FRS did not initiate, authorize, license, or otherwise permit Defendants to operate the Infringing Website or contact consumers using the FRS name.

68.    Consumers encountering Defendants' website and receiving phone communications from Defendants will be, and indeed already have been, confused into believing that Defendants' services emanate from FRS, or that Defendants' services are authorized and/or sponsored by FRS, when they are not.

69.    The blatant plagiarism of content from FRS's website for use on Defendants' website is indicative of the intentional and willful nature of Defendants' violation – Defendants are clearly aware of the existence of FRS and the nature of FRS's business, and have undertaken their infringing actions in a transparent attempt

to confuse and deceive consumers. Defendants' actions have harmed, and will continue to harm, FRS's business, including but not limited to its goodwill and reputation in the marketplace.

70.    Defendants are offering services using the FRS Mark in violation of the Trademark Act, 15 U.S.C. § 1114(1), et seq., and in violation of the common law, that are intended to cause and are likely to cause confusion among consumers and the trade.

71.    Defendants have willfully infringed upon the FRS Mark and trading off the reputation and goodwill associated therewith.

72.    Upon information and belief, Defendants registered, designed, and operated the Infringing Website, and used the FRS name in phone calls to consumers, in an attempt to evoke the FRS Mark in the minds of consumers and cause confusion.

73.    Prior to filing this action, FRS attempted to contact Defendants, including by sending a letter to the physical address listed on the Infringing Website (100 SE 2nd Street, 3940 International Place, Miami, Florida 33131), but the mail was returned as undeliverable with the notation "Attempted – Not Known – Unable to Forward." FRS has also contacted other individuals and entities suspected to be involved with the operation of the Infringing Website but received no response.

74.     At some time between May 6, 2025 and May 15, 2025, Defendants modified the Infringing Website, which no longer includes some of the sections plagiarized from the FRS website, or the prominent "FRS" logo. As of May 15, 2025, the Infringing Website states "F.R. Services" instead of "Financial Recovery Services." However, Defendants continue to contact consumers by phone and FRS continues to receive complaints from consumers related to Defendants' conduct.

75.     FRS has diligently attempted to identify Defendants but Defendants' use of identity-masking services for the domain registration of the Infringing Website and for the registration of its Call Back Numbers has left FRS no choice but to initiate this action which will authorize FRS to conduct third-party discovery to identify Defendants, and by which FRS seeks, among other relief, actual damages, disgorgement of Defendants' profits, an award of treble damages, and attorneys' fees as well as an injunction and destruction of all infringing promotional materials and advertising.

## Count I

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

76.     FRS restates and incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

77.    The FRS Mark is an inherently distinctive, strong, valid, and protectable trademark owned by FRS.

78.    FRS's registration of the FRS Mark constitutes prima facie evidence of the validity of the mark, of FRS's registration and ownership of the mark, and of FRS's exclusive right to use the mark in commerce or in connection with the services identified in the registration.

79.    By virtue of its prior use and registration, FRS has priority over Defendants with respect to the use of the FRS Mark in association with collection agency services.

80.    Defendants have used, and are using, the FRS Mark and elements thereof in connection with the advertising and promotion of collection agency services, without any approval or authorization from FRS.

81.    Defendants' use of the FRS Mark in commerce is likely to cause confusion, to cause mistake, or to deceive.

82.    The above-described acts of Defendants constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling FRS to relief.

83.    Defendants, upon information and belief, have unfairly profited from their trademark infringement.

84.    By reason of Defendants' acts of trademark infringement, FRS has suffered damage to the goodwill associated with its name and the FRS Mark.

85.    By reason of Defendants' acts of trademark infringement, FRS has suffered actual damages.

86.    Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm FRS, its federally registered trademark, and the valuable goodwill associated with the FRS Mark.

87.    Defendants' acts of trademark infringement have irreparably harmed, and, if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

88.    By reason of Defendants' acts, including but not limited to their willful and intentional copying of material from the FRS Website and Defendants' attempts to conceal their identities, FRS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, FRS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

89.　　By reason of Defendants' willful acts of trademark infringement, FRS is entitled to disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

90.　　This is an exceptional case, making FRS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## **Count II**

### **Trademark Infringement, False Designation of Origin, and Unfair Competition in Violation of 15 U.S.C. § 1125(a)(1)(A)**

91.　　FRS restates and incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

92.　　Defendants have used, and are using, the FRS Mark in commerce in connection with Defendants' services and in advertising and promotion of its services.

93.　　Defendants use the FRS Mark in a manner that is likely to cause and has in fact caused, confusion and mistake, and is likely to deceive, and has deceived, the relevant public into believing that Defendants' services are authorized, sponsored, approved by, or otherwise affiliated with FRS.

94.     The above-described acts of Defendants constitute infringement of the FRS Mark and use of false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling FRS to relief.

95.     The above-described acts of Defendants, if not enjoined by this Court, are likely to continue to deceive members of the general public.

96.     Defendants have, upon information and belief, profited from the actions alleged.

97.     By reason of Defendants' above-described acts, FRS has suffered actual damages.

98.     By reason of Defendants' acts, including but not limited to its willful and intentional copying of material from the FRS Website and Defendants' attempts to conceal their identities, FRS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, FRS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

99.     By reason of Defendants' willful acts of trademark infringement, FRS is entitled to disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

100.   This is an exceptional case, making FRS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## Count III

**Defendants' False and Misleading Advertising and Promotion in Violation of 15 U.S.C. § 1125(a)(1)(B)**

101.   FRS restates and incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

102.   Defendants' practices, as described in this Complaint, constitute unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

103.   Defendants have violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendants' business practices and services as set forth above.

104.   The above-described acts of Defendants, if not enjoined by this Court, are likely to continue to deceive members of the general public.

105.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm FRS.

26

106.    By reason of Defendants' above-described acts, FRS has suffered actual damages.

107.    By reason of Defendants' acts, FRS has suffered and will continue to suffer injuries, including to FRS's business reputation. However, FRS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, FRS is entitled to entry of preliminary and permanent injunctive relief, requiring Defendants to cease their false and misleading advertising and promotion and unfair competitive practices.

108.    Because the above-described acts of Defendants are willful, FRS is entitled to disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

109.    This is an exceptional case, making FRS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## Count IV
### Unfair Competition in Violation of the Common Law

110.    FRS restates and incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

111.   The above-described acts of Defendants constitute common law unfair competition.

112.   The above-described acts of Defendants unfairly and wrongfully exploit FRS's trademark, goodwill, and reputation.

113.   By reason of the above-described acts of Defendants, FRS has suffered damage to the goodwill associated with its trademark.

114.   By reason of Defendants' above-describe acts, FRS has suffered actual damages.

115.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm FRS.

116.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

117.   By reason of Defendants' acts, FRS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and injunctive relief, in addition to awarding disgorgement of Defendants' profits (enhanced at the Court's discretion) and corrective advertising costs to FRS.

28

118.   FRS is entitled to actual damages in an amount to be determined at trial.

## Count V

**Deceptive and Unfair Trade Practices in Violation of Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.**

119.   FRS restates and incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

120.   The above-described acts of Defendants constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of the laws of the State of Minnesota.

121.   Specifically and without limitation, said acts pass off Defendants' goods or services as those of FRS in violation of Minn. Stat. § 325D.44, subd. 1(1); cause a likelihood of confusion as to the source, sponsorship, approval, or certification of Defendants' services in violation of Minn. Stat. § 325D.44, subd. 1(2); cause a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by FRS as to Defendants' goods or services in violation of Minn. Stat § 325D.44, subd. 1(3); constitute a representation that Defendants' goods or services have characteristics, ingredients and benefits that they do not have in violation of Minn. Stat. § 325D.44, subd. 1(5); constitute a representation that Defendants' goods and services are of a particular standard,

quality, or grade in violation of Minn. Stat. § 325D.44, subd. 1(7); and constitutes unfair methods of competition and unfair or unconscionable acts or practices in violation of Minn. Stat. § 325D.44, subd. 1(12).

122.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

123.   By reason of Defendants' above-describe acts, FRS has suffered actual damages.

124.   FRS is entitled to actual damages in an amount to be determined at trial.

125.   By reason of Defendants' willful acts, FRS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding damages and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Financial Recovery Services, Inc. ("FRS") respectfully requests judgment against Defendants as follows:

1. That the Court enter judgment against Defendants that Defendants have:

    a.  Infringed the rights of FRS in its federally registered FRS FINANCIAL RECOVERY SERVICES mark in violation of 15 U.S.C. § 1114(1);

    b.  Infringed the rights of FRS in the FRS Mark and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

    c.  Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a); and

    d.  Engaged in unfair competition under the common law of Minnesota and the Minnesota Deceptive Trade Practices Act.

2.  That the Court find that Defendants' infringement of the FRS Mark, false and misleading advertising and promotion, unfair competition, and deceptive trade practices were willful.

3.  That, when Defendants are identified, the Court preliminarily and permanently enjoin and restrain Defendants, their agents, servants, employees, successors, and assigns, and all other persons acting in concert with, or in conspiracy with, or affiliated with, Defendants from:

    a.  Using the FRS Mark in any manner;

    b.  Advertising, stating or suggesting that Defendants are associated with, approved by, or connected in any way with FRS;

c.  Engaging in any unfair competition with FRS; and

d.  Engaging in any deceptive trade practices.

4.  That the Court require Defendants to disclose conspicuously and prominently in any and all public-facing materials, including but not limited to on the internet domain https://finrecservices.com/ and all advertising or marketing materials, that Defendants are not associated with, approved by, or connected in any way with FRS.

5.  That the Court require Defendants to provide notice in writing to all consumers previously contacted by Defendants that Defendants are not associated with, approved by, or connected in any way with FRS.

6.  That FRS be awarded monetary relief in the form of disgorgement of Defendants' profits for trademark infringement, false advertising, and unfair competition and that this monetary relief be trebled due to Defendants' willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

7.  That the Court award disgorgement of Defendants' profits resulting from Defendants' infringement of FRS's rights and by means of Defendants' unfair competition to FRS.

8.  That Defendants be ordered to account for and disgorge to FRS all amounts by which Defendants have been unjustly enriched by reason of Defendants' unlawful actions.

9.  That FRS be awarded punitive damages by reason of Defendants' willful unlawful actions.

10. That the Court award FRS its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

11. That the Court award FRS its actual damages.

12. That the Court award FRS its costs incurred.

13. That the Court award such other and further relief to FRS as the Court may deem just and appropriate.

**ROSSMAN KIRK, PLLC**

Dated: May 22, 2025

*/s/ John K. Rossman*

John K. Rossman, MN #0244831
Benjamin J. Kirk, MN #0393192
Trevor S. Johnson, MN #0400849
2626 E. 82nd Street, Suite 135
Bloomington, MN 55425
Phone: 612-284-2143
john.rossman@rossmankirk.com
benjamin.kirk@rossmankirk.com
trevor.johnson@rossmankirk.com

**ATTORNEYS FOR PLAINTIFF
FINANCIAL RECOVERY
SERVICES, INC.**